DocuSign Envelope ID: 2C05CF04-73AC-41FC-8FC1-A1062FAECE1B

SEYFARTH SHAW LLP
Eric Hill (SBN 173247)
ehill@seyfarth.com
Ping Wang (SBN 351428)
pwang@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

SEYFARTH SHAW LLP
Leo Li (SBN 293539)
lli@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

Attorneys for Defendants
INTERCONTINENTAL HOTELS GROUP
RESOURCES, LLC; IHG MANAGEMENT
(MARYLAND) LLC; INTERCONTINENTAL HOTELS
OF SAN FRANCISCO, INC.; SIX CONTINENTS
HOTELS, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK WISE, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INTERCONTINENTAL HOTELS GROUP RESOURCES, LLC, a Delaware limited liability company; IHG MANAGEMENT (MARYLAND) LLC, a Maryland limited liability company; INTERCONTINENTAL HOTELS OF SAN FRANCISCO, INC., a Delaware corporation; SIX CONTINENTS HOTELS, INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | **CLASS ACTION**<br><br>Case No. _____<br><br>**DECLARATION OF KRISTIN URIBE IN SUPPORT OF REMOVAL TO THE UNITED STATES DISTRICT COURT**<br><br>[San Francisco County Superior Court Case No. CGC-23-611350]<br><br><br>Complaint Filed:     December 29, 2023 |

DECLARATION OF KRISTIN URIBE IN SUPPORT OF REMOVAL TO THE UNITED STATES DISTRICT COURT

I, Kristin Uribe, declare and state as follows:

1.     I am Regional Vice President of People and Culture, West Region for IHG Hotels & Resorts ("IHG"). I have personal knowledge of the following facts and if called upon to testify, I could and would testify competently hereto.

2.     In my capacity as Regional Vice President, I am one of the highest-ranking employees in the Human Resources department at IHG, for the West Region.

3.     In this position, I have access to the payroll and human resources information regarding the non-exempt employees who have worked at the California hotels managed by Defendants IHG Management (Maryland) LLC ("IHGM") and InterContinental Hotels Group Resources, LLC ("IHGR"). I also have access to the payroll and human resources information regarding the non-exempt employees of InterContinental Hotels of San Francisco, INC ("IHSF"). I also have access to the company payroll system and related reports concerning employee headcount, wages, and dates of employment. The payroll team and I gathered the data referenced below from company databases.

4.     Plaintiff Mark Wise works at the InterContinental San Francisco Hotel and is an employee of IHSF. Mr. Wise provided IHSF with his home address during the course of his employment for purposes of his personnel files, payroll checks, and tax withholdings.  Based on IHSF's records, throughout the period of his employment, Plaintiff was a resident of California.

5.     The Complaint filed by Plaintiff seeks relief on behalf of: "[a]ll non-exempt employees who have worked for Defendants in the State of California at any time between four years prior to the filing of this complaint and the date of final judgment in this action." Complaint, ¶ 19.

6.     In February 2024, I reviewed company payroll records to determine the number of non-exempt employees who worked at hotels managed by IHGM or IHGR, and/or were employees of IHSF, in California throughout the period relevant to this lawsuit, namely, December 29, 2019 to the present ("the class period"). The hotels in California are:  InterContinental San Diego Hotel, InterContinental San Francisco Hotel, InterContinental San Francisco – Mark Hopkins Hotel, InterContinental Los Angeles- Downtown Hotel, Hotel Indigo Los Angeles, Hotel Indigo San Diego, Regent Santa Monica, Holiday Inn Los Angeles, and Holiday Inn & Express San Francisco. Based on data provided by the payroll team, roughly 4,068 non-exempt employees worked at these hotels during the class period.

DECLARATION OF KRISTIN URIBE IN SUPPORT OF REMOVAL TO THE UNITED STATES DISTRICT COURT

7. IHGM is a Maryland Limited Liability Company. IHGM is, and has been at all times since this action commenced, organized under the laws of the State of Maryland.

8. The majority of IHGM's executive and administrative functions, including corporate finance and accounting, are performed in Georgia, where its corporate headquarters are located. IHGM's executive operations are managed from its Georgia headquarters, where the majority of its corporate officers maintain offices and direct, control, and coordinate IHGM's activities. IHGM's sole member is InterContinental Hotels Group Resources, LLC, a Delaware LLC with its principal place of business in Atlanta, Georgia. InterContinental Hotels Group Resources, LLC's corporate officers maintain offices in Georgia, and a majority of its corporate officers and directors work from its headquarters in Georgia.

9. Based on my review of the company data and the related reports, I was able to determine the dates that Plaintiff and each putative class member were employed and received pay in a non-exempt position during the class period. I was also able to determine the hourly rate of pay for Plaintiff, the average hourly rate of pay for the proposed class members, and the total work weeks Plaintiff and the proposed class members worked since December 29, 2019, based on their hire and termination dates (if any). Plaintiff's hourly rate of pay was $36.18 in 2023, and the average hourly rate of pay for the proposed class members was approximately $24.31.

10. Based on my review of the company data and the related reports, the putative class members (based on Plaintiff's proposed class definition) worked approximately 418,874 workweeks during the proposed class period of December 29, 2019 to present (February 23, 2024).

11. During the one-year statutory period, dating back to December 29, 2022, there were approximately 2,556 potential class members with approximately 127,660 total weeks worked. Defendants generally pay non-exempt employees on a bi-weekly basis, so at least 63,830 wage statements were issued to these employees (127,660/2) since December 29, 2022.

12. In my capacity as Regional Vice President, I also have access to any collective bargaining agreements ("CBA") between IHSF and the proposed class members.

13. During the entire time of Plaintiff's employment, Plaintiff and other proposed class members who worked at the same hotel, the InterContinental San Francisco Hotel, were subject to a

3

CBA with the UNITE HERE LOCAL 2. The CBA includes the following provisions: Section 2. Workday, workweek; Section 3. Shifts; Section 4. Overtime; Section 5.2 Scheduling; Section 5.3 Reporting Pay;  Section 9. Rest Periods; Section 10. Meals; Section 11. Combination Work; Section 21. Pay period; Section 22. Equal pay for men and women; Section 26. Minimum scale; Section 30. Adjustment of pay; APPENDIX "A" Wage rates 2013-2018. These provisions explicitly provide for the wages, hours of work, and working conditions of the employees covered by the CBA. The CBA expressly provides for premium wage rates for all overtime hours worked, requiring that "[w]ork in excess of eight (8) hours in a day or forty (40) hours in a week, shall be compensated for at the rate of time and one-half (1-1/2) the regular rate of pay." (Ex. A —SECTION 4, p. 57.) The CBA also details a variety of overtime rates for different circumstances, such as "[a]ny work performed on the sixth (6th) consecutive day of work shall be compensated at the rate of time and one-half (1-1/2 times) the regular rate of pay. Any work performed on the seventh (7th) consecutive day of work shall be compensated at the rate of double (2 times) the regular rate of pay …. Employees who work more than twelve (12) consecutive hours shall receive two (2) times their straight time rate of pay for all hours worked in excess of twelve (12) hours." (Ex. A —SECTION 4, p. 57-58.)" A true and correct copy of the relevant sections of the referenced CBA is attached hereto as Exhibit A.

14.     The initial effective period of the Local 2 CBA in Exhibit A was from August 14, 2013 to August 14, 2018. The Memorandum of Agreement ("MOA") of the CBA, dated November 7, 2022, extends Local 2's effective period until August 14, 2024. A true and correct copy of the referenced MOA is attached hereto as Exhibit B. Additionally, the Memorandum of Understanding ("MOU"), dated November 5, 2019, provides modifications and amendments to the CBA. A true and correct copy of the referenced MOU is attached hereto as Exhibit C.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this 26th day of February 2024, in San Francisco, California.

*Kristin Uribe*
_____
Kristin Uribe

# EXHIBIT A

EXHIBIT A



# COLLECTIVE BARGAINING AGREEMENT

### BETWEEN

# THE HOTELS

### AND

# UNITE HERE LOCAL 2

## AUGUST 14, 2013 — AUGUST 14, 2018



# COLLECTIVE BARGAINING AGREEMENT

**BETWEEN**

## THE HOTELS

(FAIRMONT, GRAND HYATT, HILTON UNION SQUARE, HYATT REGENCY, HOLIDAY INN CIVIC CENTER, HOLIDAY INN FISHERMAN'S WHARF, HOLIDAY INN EXPRESS HOTEL & SUITES, INTERCONTINENTAL, MARRIOTT UNION SQUARE, PALACE, PARK CENTRAL, WESTIN ST. FRANCIS, ST. REGIS, AND THE "W" HOTEL)

**AND**

## UNITE HERE LOCAL 2

### AUGUST 14, 2013 — AUGUST 14, 2018



Should there be a conflict between this book and a particular MOU, the language of the MOU shall prevail.

The official version of this book shall be the English version.

## PREAMBLE

THIS AGREEMENT is made and entered into by and between UNITE HERE LOCAL 2, affiliated with UNITE HERE INTERNATIONAL UNION, AFL-CIO, hereinafter referred to as the Union, and the SAN FRANCISCO HOTELS (FAIRMONT, GRAND HYATT, HILTON UNION SQUARE, HYATT REGENCY, HOLIDAY INN CIVIC CENTER, HOLIDAY INN FISHERMAN'S WHARF, HOLIDAY INN EXPRESS HOTEL & SUITES, INTERCONTINENTAL, MARRIOTT UNION SQUARE, PALACE, PARK CENTRAL, WESTIN ST. FRANCIS, ST. REGIS, AND THE "W" HOTEL), each hereinafter referred to as the Employer:

## AGREEMENT

### SECTION 1. RECOGNITION

The Employer recognizes the Union as the sole representative for collective bargaining purposes of all its employees falling within the jurisdiction of said Union, excepting and excluding employees referred to in Section 2 hereof.

### SECTION 2. EXEMPTIONS

The exemptions from coverage under the collective bargaining agreement are subject to adjudication by the National Labor Relations Board in case 20-UC-232. Nothing in our proposal under Section 2 or anywhere else in the Agreement shall require the inclusion of persons or positions determined to be supervisory or managerial in case 20-UC-232.

(1) Chefs (one per hotel);

(2) Front Office Clerks;

(3) Inside Office help such as Bookkeepers, Stenographers and the employees of the Auditing Department (except Dining Room Cashiers, Food Checkers and Beverage Checkers);

(4) Assistant Managers (the designation of the title Assistant Manager shall not be used to circumvent the spirit and intent of this Agreement);

(5) Bona fide Room Managers hired after July 1, 1975;

## SECTION 2. WORKDAY, WORKWEEK

(a) Workday. The workday shall consist of seven (7) hours work, two paid fifteen minute break periods, and a paid meal period of one-half (½) hour, for a total of eight (8) hours.

(b) Workweek. Five (5) consecutive days of work within seven (7) successive calendar days, beginning on the same day of the week shall constitute a week's work.

## SECTION 3. SHIFTS

(a) Short Shift. The short shift shall consist of at least three (3) hours of work. No employee shall be paid for less than a short shift on any day worked, except in cases of discharge and/or employees voluntarily leaving early or as set forth in Section 5.3 Reporting Pay.

(b) Split Shifts. Split shifts shall only be permitted in the Dining Room Department.

## SECTION 4. OVERTIME

(a) Work in excess of eight (8) hours in a day or forty (40) hours in a week, shall be compensated for at the rate of time and one-half (1-1/2) the regular rate of pay.

(b) Any work performed on the sixth (6th) consecutive day of work shall be compensated at the rate of time and one-half (1-1/2 times) the regular rate of pay. Any work performed on the seventh (7th) consecutive day of work shall be compensated at the rate of double (2 times) the regular rate of pay. The premiums contained in this paragraph shall be paid for work performed by an employee on consecutive days without regard to whether or not such days fall within one, or more than one, workweek(s), and without regard to any other provision of this section. The parties agree that this provision does not change the Hotel workweek as it existed in the 1980-1986 contract period. An employee working less than forty (40) hours per week may volunteer to work on a sixth (6th) consecutive day without receiving overtime compensation by voluntarily signing one or both of two lists to be posted periodically by the Employer. The first list is for regularly scheduled non-overtime work on a sixth (6th) day. The second list is for

ad-hoc non-overtime work that arises from time to time on a daily basis on the sixth (6th) day. The Employer shall schedule work for employees who have volunteered for same on either or both of said lists on a seniority basis. (Pursuant to existing (c), banquet personnel are exempt from this provision.) The employee signing the second list for ad hoc non-overtime work thereby consents to waive the thirty-six (36) hour notice of Section 5.2(d).

(c) For the purposes of overtime, banquet personnel shall be exempt from the provisions of paragraphs (a) and (b) of this Section.

(d) For the purpose of computing overtime, any portion of one-half (½) hour shall be considered one-half (½) hour.

(e) <u>Overtime</u>: When overtime is required, it shall be offered first to the employees according to seniority and then assigned in the order of lowest seniority to the highest.

(f) Except for banquet employees, employees who are scheduled for either three (3) or four (4) hour shifts shall not receive time and one-half (1-1/2) for hours worked in excess of their scheduled shifts, except that where an Employer develops a pattern and practice of abusing overtime on three (3) and four (4) hour shifts and as a result increases the number of short shift positions by more than ten percent (10%) above the level existing in the final year of the previous contract, as determined by an arbitrator, the employees of such Employer shall, following the decision of an arbitrator receive time and one-half (1-1/2) for all hours worked in excess of such three (3) and four (4) hour shifts for the remainder of this Agreement. The Employer shall provide the Union with the schedules and other applicable facts regarding the existing level of short shift schedules during the final year of the previous contract.

(g) Employees who work more than twelve (12) consecutive hours shall receive two (2) times their straight time rate of pay for all hours worked in excess of twelve (12) hours.

(h) No Employer, except in cases of emergency, shall change an employee's schedule pursuant to Section 5.2 (d) where the result of said schedule change would require the affected employee to work two "back to back" five (5)

shifts per week work schedules within two (2) consecutive Hotel workweeks, except where an employee consents to change pursuant to 5.2 (d).

## SECTION 5. SENIORITY

(a) Seniority shall be defined as the length of the most recent continuous period of service with the Employer. Seniority shall accrue for regular employees within a given classification of work as set forth in the attached wage scales. Seniority shall be expressed in terms of years, months and days. If two or more employees are employed within the same classification on the same day, their seniority shall be determined by the employment records.

(b) An individual employee as defined in Section 1 of the General Rules shall continue to accumulate seniority during:

1. Time spent in the Armed Services of the United States or the State of California pursuant to the provisions of the Vietnam Era Veterans' Readjustment Assistance Act of 1974, time spent in alternative service as defined by the Selective Service Act or time spent in the Red Cross or other combat relief service.

2. Periods of absence of not more than six (6) consecutive months due to bona fide illness or injury provided that the individual has notified their immediate supervisor of the illness or injury within twenty-four (24) hours of the occurrence of said illness or injury or as soon as possible if the employee is physically incapacitated so that he cannot provide such notice within twenty-four (24) hours.

3. Any period in which an employee has been terminated and the employee's termination has been rescinded, reversed or the employee is subsequently reinstated, unless modified pursuant to the terms of the Grievance Procedure.

4. Layoffs of less than thirty (30) consecutive calendar days.

5. Leaves of absence of not more than six (6) months for other reasons authorized by the Employer.

(c) An individual employee as defined in section (a) hereof shall continue to retain seniority during time spent in an elected or appointed Union

office provided that such employee returns within sixty (60) calendar days of the termination of his term in office.

(d) When a food and/or beverage outlet has been designated as a "specialty room" as of August 13, 1986, as properly set forth in Appendix "E," the Employer shall be the sole judge of an individual's ability and qualifications to work in that room. The Employer shall prepare a list of "specialty rooms" as of the effective date of this Agreement and no room shall be added to this list during the term of this Agreement without the agreement of the parties. If no agreement is reached, the matter shall be referred to Section 12 Grievance Procedure. *See Appendix "E" — Specialty Rooms.*

(e) Employees who have been promoted and are working less than five (5) days in a work week shall retain the right to work in their previous classification as long as overtime is not involved and at the same time the one to which they have been promoted in the same work week. In doing so, the employee shall retain classification seniority up until the time of promotion and shall continue to accrue classification seniority in the classification to which they were promoted regardless of which classification they work. In completing and filling out his/her weekly schedules with work from the previous classification, the promoted employee may exercise seniority from the bottom up in a manner that insures that the employee displaced shall be the least senior employee whose displacement most nearly accomplishes a schedule equivalent to the schedule previously worked by the promoted employee. Displaced employees shall have the same right.

(f) The parties agree that career ladders and appropriate on-the-job and cross-classification training and work experience are beneficial to both the Employer and the employee because such training and experience provides higher quality and more flexible and efficient service to the guests, and creates fuller and better employment for the employees. The parties also agree that this is best accomplished on an individual test program basis at individual hotels. To accomplish these mutually desirable goals, the Union will meet and attempt to establish test programs with an Employer who requests same on such terms and conditions as may be negotiated.

**Section 5.1 Layoff, Reduced Schedules, Room Closures, Recall and**

**Another Job Classification**

(a) Layoff. When it is necessary to lay off employees, those employees as defined in sub-section 5(a) hereof with the least seniority in the job classification affected shall be laid off first. When the work force is increased within the classification, employees on layoff shall be recalled in order of their job classification seniority. Such laid-off employee shall have the right to exercise his classification seniority to displace a less senior employee. The employee displaced shall be the least senior employee whose displacement would most nearly accomplish a schedule equivalent to the schedule previously worked by the laid-off employee. Displaced employees shall have the same right.

(b) Reduced Schedule. When regular schedules are reduced within a particular work unit, such schedule reduction shall be accomplished by seniority within the classification in that unit. When an employee's regular schedule is reduced by fifty percent (50%) in a continuous fourteen (14) calendar day period in spite of the employee's exercise of seniority rights within the work unit, then that employee shall have the right to exercise his classification seniority to displace a less senior employee. The employee displaced shall be the least senior employee whose displacement would most nearly accomplish a schedule equivalent to the schedule previously worked by the laid-off employee. Displaced employees shall have the same right.

(c) Room Closure. In the event that a food and beverage outlet is closed for two (2) weeks or more, employees in said room shall be considered laid-off and said laid-off employee shall have the right to exercise his classification seniority to displace a less senior employee whose displacement would most nearly accomplish a schedule equivalent to the schedule previously worked by the laid-off employee. Displaced employees shall have the same right. If such an outlet is reopened, employees laid-off by the closure shall have first right to recall in order of classification seniority.

(d) Recall. All regular employees who have been laid-off shall be recalled before the hiring of any new employees as provided herein. Regular employees who have been laid-off for more than thirty (30) consecutive

days shall be notified by the Employer at least forty-eight (48) hours before they are scheduled to return to work, unless such notice is waived by the employee. An individual employee on layoff longer than twenty-four months shall lose their recall rights.

(e) Another Job Classification. An employee who has been laid-off for a period of thirty (30) days shall have the right to replace a less senior employee in another job classification provided the senior employee had previously worked for the Hotel in the other job classification. Such option must be exercised within forty-eight (48) hours of the thirtieth consecutive day of layoff; provided further employees exercising such option shall work the same schedule of hours and days off as the individual replaced.

## Section 5.2 Scheduling

(a) Employees within a classification with the greatest classification seniority within a room or department as the case may be shall have the preference of scheduled shifts which shall include days off, and shall have a choice of available vacation periods based on Hotel seniority. Nothing contained in this Section shall be construed to interfere with a Hotel's right to establish the hours and days of operation and the number of employees to be scheduled, but employees shall have preference for such available schedules as determined by the Employer in accordance with seniority and other provisions of this Agreement.

(b) There shall be placed in a conspicuous place in each department a work schedule specifying the following information about each employee in the department: name, classification, hire date, starting and finishing times, days off, meal times and rest period(s). The Employer shall keep the work schedule up to date. Upon request, the Employer will furnish the Union with a current seniority list including social security numbers not more than once every six (6) months.

(c) Except in cases of emergency, regular employees shall have a fixed starting time, which time shall not be changed by the Employer without giving a twenty-four (24) hour notice to the employee affected.

(d) Except in cases of emergency or as provided in Section 5.1 Layoffs,

regular employees shall have a fixed weekly schedule of working days, which schedule shall not be changed by the Employer without a thirty-six (36) hour notice to the employee affected unless said employee consents to waive the period of notice. Where the thirty-six (36) hour notification is not given, the first day of the scheduled change shall be paid for at the overtime rate of time and one-half (1-1/2) the straight time rate of pay.

(e) Banquet department employees who desire two regular days off shall be given the opportunity, subject to emergency.

(f) Employees within a department shall have the right to have a schedule bid upon the request of a majority of the employees of that department. Employees may request another bid after six (6) months from the last bid.

### Section 5.3 Reporting Pay

(a) Notice that the service of a regular employee will not be required on a given day shall be given to the employee not later than the termination of the employee's shift on the preceding day. If such notice is not given and such employee reports to work, the employee shall be paid a sum of money equal to the sum of money received for the straight time shift worked on the preceding work day.

(b) When an Employer or the Employer's representative orders an employee to report for work and for any reason said employee is not allowed to work, the Employer shall pay the employee the scheduled shift's wages. This reporting pay shall apply to all employees unless such personnel arrive for work in a manner unacceptable to the Employer. Employees called to the Hotel for reasons of training classes, room or departmental meetings, shall be compensated by the Hotel at the straight time rate of pay for a minimum of two (2) hours, unless overtime is applicable.

### SECTION 6. PROMOTIONS AND TRANSFERS

(a) In filling job vacancies which may exist within the hotel bargaining unit, qualified employees from within the hotel bargaining unit shall be given preference in filling said job vacancy prior to the consideration of other applicants. Seniority shall be the determining factor in promotions when the Employer determines that the senior employee is qualified and has the

(a) Proper, sanitary dressing rooms with individual lockers shall be made available to all employees. Employees will be provided with a lock. Replacement of locks and/or keys due to employee negligence shall be conditioned upon a payment by the employee of $3.00.

(b) Two Union employees covered by this collective bargaining agreement, one of whom shall be a Shop Steward unless no shop stewards are present on the Hotel premises, shall be present in the event the Employer finds it necessary to inspect lockers.

(c) The Employer shall be responsible for loss or damage to uniforms, linen or tools of the trade belonging to the employees resulting from fire within the premises. The Employer shall also be responsible for loss or damage to all wearing apparel belonging to the employee resulting from fire within the premises due to negligence on the part of the Employer.

## SECTION 9. REST PERIODS
(a) An employee scheduled to work a shift of four (4) consecutive hours or more duration shall be provided a fifteen (15) minute rest period for each four (4) hours worked.

(b) Time allowed for rest periods shall be treated as paid time.

## SECTION 10. MEALS
Except as herein otherwise provided, no employee shall be required to accept food or lodging as part of wages unless such food or lodging, under the specific rules, hereinafter is made part of the wages; but if not so made part of the wages, such employee shall not be required or permitted to eat or lodge, as the case may be, at the Hotel where employed.

(a) Employees entitled to meals shall receive meals which are palatable, wholesome, and comparable in quality to those served to the guests. A selection of meal items shall be made available at all times including at least two hot meat entrees (which may also include fish and/or fowl). The meals shall be served under clean, sanitary conditions and must be consumed on the premises in areas designated by the Hotel.

(b) Employees working an eight (8) hour shift shall be allowed a full half

(½) hour for their meal period which shall not be deemed to be a break in the time worked. In the event the Employer fails to provide time off (for any reason) said employee shall be entitled to receive an additional one-half (½) hour at the straight time rate for the meal period worked.

(c) Time off for meals shall be provided between three (3) and five (5) hours from the beginning of the shift. Doorpersons, housepersons and banquet housepersons and other former Local 14 classifications shall continue to be provided time off for meals between three (3) and six (6) hours from the beginning of the shift.

(d) Rest breaks and meal periods shall be duty free.

(e) In each Hotel, the management will designate an individual to see that this section of the Agreement is properly carried out. Employees under this section shall be obligated to cooperate in maintaining sanitary conditions in that section of the Hotel where meals are furnished.

## SECTION 11. COMBINATION WORK
Where an employee occupies a position which combines two or more classifications of work, then (except as otherwise provided) they shall be paid at the rate of the highest classification provided they work in such highest classification for one and one-half (1-1/2) hours or more during any particular shift. But the Hotels may not, by virtue of this rule, evade the hiring of an employee in a higher classification where such an employee in a higher classification would normally be hired, according to the usages of the trade.

## SECTION 12. HOLIDAYS AND VACATIONS

### Section 12.1 Holidays

(a) The following days shall be observed as holidays with pay under this Agreement:

| | |
|---|---|
| • Labor Day | • First Monday in September |
| • Thanksgiving Day | • Fourth Thursday in November |
| • Christmas Day | • December 25 |
| • New Year's Day | • January 1 |
| • Martin Luther King's Birthday | • Third Monday in January |
| • Independence Day | • July 4 |

(b) Regular and steady extra employees who are not scheduled to work on

include only arbitrations and adjustment boards relating to the steward's own hotel.

(f) Shop stewards shall be given access to hotel premises on their days off to investigate grievances.

### SECTION 21. PAY PERIOD

(a) Wages of a regular employee shall be paid semi-monthly; provided that should an employee have a personal financial emergency, said employee may, on the seventh (7th) day prior to the established pay day of the Hotel in which the employee works, apply for and receive an advance on account of said wages. Requests for advances up to three in a calendar year by the same employee shall be granted. Advance requests in excess of three (3) per calendar year shall be at the Employer's sole discretion. If the pay day falls on a holiday, all wages due shall be paid on the preceding business day.

If there is a shortage of $50.00 or more in an employee's paycheck, the Employer will correct it within forty-eight (48) hours, excluding Saturdays, Sundays and holidays.

(b) Wages of extra employees on hotel lists shall be paid on the hotel's regular payroll.

(c) The Employer may pay hiring hall extras (i.e. servers, cooks, bartenders) on a weekly payroll or on a daily basis. If paid on a weekly payroll, these extras may request to receive earned wages in advance of that payroll. The individual advance check will be issued within thirty-six (36) hours after the request is received. In the event that the hotel elects to pay on a daily basis, and the employee is not paid within twenty-four (24) hours after the completion of his work, said employee shall be compensated for one (1) hour at the overtime rate as specified in the wage schedule for each business office day of delay thereafter.

The Hotel will provide the Union with a list of functions worked, total hours paid and amount of gratuity for each function worked with the weekly gratuity checks.

Extras shall continue to receive reporting pay prior to leaving the function for which they were scheduled, except where the past practice is different.

(d) If an employee is laid off or services are terminated, the employee shall be paid at the time the last shift is terminated; an employee not paid as provided above shall be compensated one (1) day's pay for every day said employee reports to the Hotel for pay.

## SECTION 22. EQUAL PAY FOR MEN AND WOMEN

(a) The wage scales shall apply equally to male and female employees.

(b) Whenever in this Agreement the masculine gender is used, it shall be deemed to include the feminine gender.

## SECTION 23. CONSTRUCTION

In the case where these General Rules are qualified by the provisions of the rules and wage schedules of a particular craft, as provided hereinafter, and where there is any inconsistency between these rules and the rules and wage schedules of a particular craft, as provided hereinafter, the rules and wage schedules of the particular craft shall prevail.

## SECTION 24. UNIFORMS AND LINEN

(a) The cleanliness, fit, comfort, style and safety of uniforms are important to both the employer and the employees. Additionally, the quality of linen service with respect to standards of cleanliness, reliability of delivery and accuracy of count are integral to the health and safety and productivity of employees dealing with laundered linen service. To further advance the parties' joint and respective interests on issues related to uniforms, linen and the laundering of both, upon request by the Union or the Employer, an ad hoc committee, with equal number of representatives of the hotel and the Union shall meet to consider and discuss any issues raised by either party. Both parties shall appoint their own representatives and meetings shall be conducted on paid time.

(b) When uniforms are required by the Employer to be worn by the employee as a condition of employment, such a uniform shall be provided and maintained by the Employer. The term "Uniform" shall be defined as wearing apparel and accessories of distinctive design and color.

(c) All uniforms and linen used by the employees while working shall be cleaned and laundered by the Employer without cost to the employee. Clean uniforms shall be provided for each employee required to wear such.

(d) Room attendants shall, individually, have the option of wearing pants or dresses. Such option of wearing pants or dresses shall be exercised only when a new style of uniform is purchased or within two (2) years of ratification.

(e) Any footwear required by the Employer, other than a black or white shoe, shall be provided and maintained by the Employer at no cost to the employee.

(f) Extra employees who do not have their linen provided by the Employer shall be paid two dollars ($2.00) in cash for linen for each shift worked.

## SECTION 25. BREAKAGE AND CASH SHORTAGE
No Employer shall make any deduction from the wage or require any reimbursement from an employee for any cash shortage, breakage, loss of equipment or guest property unless it can be shown that the shortage, breakage, loss of equipment or guest property is caused by a dishonest or willful act or by the gross negligence of the employee. However, this shall not preclude the Employer from disciplining employees under this provision for just cause.

## SECTION 26. MINIMUM SCALE
The scales of wages in this Agreement are minimum scales and do not prohibit a superior worker from receiving a higher wage.

## SECTION 27. SEATS
(a) All working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats.

(b) When employees are not engaged in the active duties of their employment and the nature of the work requires standing, an adequate number of suitable seats shall be placed in reasonable proximity to the work area, and the employees shall be permitted to use such seats when it does not interfere with the performance of their duties.

## SECTION 28. AUTOMATION
(a) In the event of a reduction of work force by reason of the introduction of new equipment or a change in methods of operation, existing employees, if qualified, shall be retained in such jobs as remain or are created in accordance with their seniority standing.

(b) The Hotel shall be required to train such employees, if qualified, on Hotel time and expense in the event that training is necessary to qualify them for the operation of new equipment.

## SECTION 29. EARLY SHIFT RELEASE

An employee, with the Employer's approval, may voluntarily leave work early, if he so desires, and be paid only for the time actually worked on that shift.

## SECTION 30. ADJUSTMENT OF PAY

Any employee earning premium pay over and above those minimum scales established in the wage scales attached hereto shall receive as wage increases under this Agreement the amount by which the minimum rate for the classification in which they are employed is increased.

## SECTION 31. MESSAGES

Telephone and other messages received by management of an emergency nature shall be immediately relayed to such employee if on the property. The Employer shall release such employee to attend to such emergency situation.

## SECTION 32. ADDITIONAL CLASSIFICATIONS OF WORK

The minimum rate of pay for any classification of work not covered by these rules or wage schedules shall be mutually agreed upon.

## SECTION 33. BULLETIN BOARDS

The Union shall have the use of a designated bulletin board of the Hotel for posting official, signed Union notices. Such official Union notices shall be dated at the time of posting and shall remain on the bulletin board no longer than fourteen (14) days.

## SECTION 34. UNION BUTTONS

All employees shall be permitted while on duty to wear one (1) official Union button evidencing Union membership.

## SECTION 35. JOB DESCRIPTION/WORKLOAD

(a) Employees shall not be required to perform work which is not customary to their craft.

(b) It is recognized by the Union that the Employer requires and retains flexibility in changing its operation and attendant duties of employees to

# APPENDIX "A"

## WAGE RATES 2013-2018

| | 7/14/13 | 8/14/13 | 2/14/14 | 8/14/14 | 8/14/15 | 8/14/16 | 8/14/17 |
|---|---|---|---|---|---|---|---|
| **Class "A" Hotels** | | | | | | | |
| Sous Chef (if employed) | 212.09 | 214.49 | 215.29 | 218.89 | 224.49 | TBD | TBD |
| Night Chef (if employed) | 202.31 | 204.71 | 205.51 | 209.11 | 214.71 | TBD | TBD |
| Banquet Chef (if employed) | 202.31 | 204.71 | 205.51 | 209.11 | 214.71 | TBD | TBD |
| Second Cook | 202.42 | 204.82 | 205.62 | 209.22 | 214.82 | TBD | TBD |
| Garde Manger/Station Cook | 198.41 | 200.81 | 201.61 | 205.21 | 210.81 | TBD | TBD |
| Butcher Station Cook | 198.41 | 200.81 | 201.61 | 205.21 | 210.81 | TBD | TBD |
| Roast Station Cook | 198.41 | 200.81 | 201.61 | 205.21 | 210.81 | TBD | TBD |
| Broiler Station Cook | 198.41 | 200.81 | 201.61 | 205.21 | 210.81 | TBD | TBD |
| Fry Station Cook | 198.41 | 200.81 | 201.61 | 205.21 | 210.81 | TBD | TBD |
| All Other Cooks, except as provided herein | 190.96 | 193.36 | 194.16 | 197.76 | 203.36 | TBD | TBD |
| Head Pantry (one to a hotel) | 186.11 | 188.51 | 189.31 | 192.91 | 198.51 | TBD | TBD |
| All Other Pantry | 178.16 | 180.56 | 181.36 | 184.96 | 190.56 | TBD | TBD |
| Help Kitchen Cooks | 176.87 | 179.27 | 180.07 | 183.67 | 189.27 | TBD | TBD |
| Pastry Chef | 212.09 | 214.49 | 215.29 | 218.89 | 224.49 | TBD | TBD |
| First Assistant to Pastry Chef | 198.41 | 200.81 | 201.61 | 205.21 | 210.81 | TBD | TBD |
| Head Baker | 198.41 | 200.81 | 201.61 | 205.21 | 210.81 | TBD | TBD |
| Baker | 195.78 | 198.18 | 198.98 | 202.58 | 208.18 | TBD | TBD |
| Assistant to Pastry | 190.19 | 192.59 | 193.39 | 196.99 | 202.59 | TBD | TBD |
| All Assistants to Baker, except as provided herein | 187.31 | 189.71 | 190.51 | 194.11 | 199.71 | TBD | TBD |
| **Extras** | | | | | | | |
| Extra Cook | 190.96 | 193.36 | 194.16 | 197.76 | 203.36 | TBD | TBD |
| Extra Pantry | 178.16 | 180.56 | 181.36 | 184.96 | 190.56 | TBD | TBD |
| **Qualified Class "A" Hotels** | | | | | | | |
| Second Cook | 198.67 | 201.07 | 201.87 | 205.47 | 211.07 | TBD | TBD |
| All Other Cooks, Butchers, except Night Cook | 191.98 | 194.38 | 195.18 | 198.78 | 204.38 | TBD | TBD |
| Night Cook | 198.67 | 201.07 | 201.87 | 205.47 | 211.07 | TBD | TBD |
| Assistant Cook | 175.65 | 178.05 | 178.85 | 182.45 | 188.05 | TBD | TBD |
| First Pantry | 186.09 | 188.49 | 189.29 | 192.89 | 198.49 | TBD | TBD |
| All Other Pantry | 166.91 | 169.31 | 170.11 | 173.71 | 179.31 | TBD | TBD |
| Chicken and Fish Butcher | 178.82 | 181.22 | 182.02 | 185.62 | 191.22 | TBD | TBD |
| *Assistant Cooks to be eliminated by attrition* | | | | | | | |
| **Food Servers** | | | | | | | |
| 8 hours within 8 | 90.56 | 91.76 | 92.16 | 93.96 | 98.00 | TBD | TBD |
| 8 hours within 11 | 88.36 | 89.56 | 89.96 | 91.76 | 98.00 | TBD | TBD |
| 6 hours straight | 67.56 | 68.46 | 68.76 | 70.11 | 73.50 | TBD | TBD |
| 6 hour shift within 9 hours | 70.32 | 71.22 | 71.52 | 72.87 | 74.97 | TBD | TBD |
| 3 hour shift | 40.90 | 41.35 | 41.50 | 42.18 | 43.23 | TBD | TBD |

UNITEHERE!

| | 7/14/13 | 8/14/13 | 2/14/14 | 8/14/14 | 8/14/15 | 8/14/16 | 8/14/17 |
|---|---|---|---|---|---|---|---|
| **Food Servers (who act as their own Cashiers)** | | | | | | | |
| 8 hours within 8 | 90.56 | 91.76 | 92.16 | 93.96 | 98.00 | TBD | TBD |
| 8 hours within 11 | 90.36 | 91.56 | 91.96 | 93.76 | 98.00 | TBD | TBD |
| 6 hours straight | 69.06 | 69.96 | 70.26 | 71.61 | 73.71 | TBD | TBD |
| 6 hour shift within 9 hours | 71.82 | 72.72 | 73.02 | 74.37 | 76.47 | TBD | TBD |
| 3 hour shift | 41.65 | 42.10 | 42.25 | 42.93 | 43.98 | TBD | TBD |
| **Bus Persons** | | | | | | | |
| 8 hours within 8 | 114.35 | 115.55 | 115.95 | 117.75 | 120.55 | TBD | TBD |
| 8 hours within 11 | 115.96 | 117.16 | 117.56 | 119.36 | 122.16 | TBD | TBD |
| 6 hours straight | 88.26 | 89.16 | 89.46 | 90.81 | 92.91 | TBD | TBD |
| 6 hour shift within 9 hours | 91.02 | 91.92 | 92.22 | 93.57 | 95.67 | TBD | TBD |
| 3 hour shift | 51.25 | 51.70 | 51.85 | 52.53 | 53.58 | TBD | TBD |
| **Banquet Bus Persons** | | | | | | | |
| 8 hours | 94.35 | 95.55 | 95.95 | 97.75 | 100.55 | TBD | TBD |
| 6 hours | 73.26 | 74.16 | 74.46 | 75.81 | 77.91 | TBD | TBD |
| 3 hours | 43.75 | 44.20 | 44.35 | 45.03 | 46.08 | TBD | TBD |
| **Hiring Hall Banquet Food Servers** | | | | | | | |
| Breakfast, Lunch, Tea | 34.94 | 35.39 | 35.54 | 36.22 | 37.27 | TBD | TBD |
| Dinner | 44.60 | 45.20 | 45.40 | 46.30 | 49.00 | TBD | TBD |
| Supper | 48.86 | 49.46 | 49.66 | 50.56 | 51.96 | TBD | TBD |
| **Steady Extra Banquet Food Servers** | | | | | | | |
| Breakfast, Lunch, Tea | 34.19 | 34.64 | 34.79 | 35.47 | 36.75 | TBD | TBD |
| Dinner | 43.60 | 44.20 | 44.40 | 45.30 | 49.00 | TBD | TBD |
| Supper | 47.86 | 48.46 | 48.66 | 49.56 | 50.96 | TBD | TBD |
| **New Year's Eve Dinner** | | | | | | | |
| Extra Food Server — | | | | | | | |
| 7 hour shift | 86.50 | 87.55 | 87.90 | 89.48 | 91.93 | TBD | TBD |
| Regular Food Servers | | | | | | | |
| (in addition to the regular rate) | 6.40 | 6.40 | 6.40 | 6.40 | 6.40 | TBD | TBD |
| New Year's Eve Overtime | | | | | | | |
| Regular & Extra Food Servers | 16.06 | 16.21 | 16.26 | 16.49 | 16.84 | TBD | TBD |
| Bus Persons | | | | | | | |
| (in addition to regular rate) | 9.85 | 9.85 | 9.85 | 9.85 | 9.85 | TBD | TBD |
| **Checkers** | | | | | | | |
| 8 hours within 8 | 162.06 | 164.46 | 165.26 | 168.86 | 174.46 | TBD | TBD |
| 8 hours within 11 | 162.27 | 164.67 | 165.47 | 169.07 | 174.67 | TBD | TBD |
| 2 meal shift | 125.18 | 126.98 | 127.58 | 130.28 | 134.48 | TBD | TBD |
| 1 meal shift | 76.26 | 77.16 | 77.46 | 78.81 | 80.91 | TBD | TBD |
| **Cashiers** | | | | | | | |
| 8 hours within 8 | 159.32 | 161.72 | 162.52 | 166.12 | 171.72 | TBD | TBD |
| 8 hours within 11 | 159.81 | 162.21 | 163.01 | 166.61 | 172.21 | TBD | TBD |
| 2 meal shift | 121.71 | 123.51 | 124.11 | 126.81 | 131.01 | TBD | TBD |
| 1 meal shift | 73.78 | 74.68 | 74.98 | 76.33 | 78.43 | TBD | TBD |

| | 7/14/13 | 8/14/13 | 2/14/14 | 8/14/14 | 8/14/15 | 8/14/16 | 8/14/17 |
|---|---|---|---|---|---|---|---|
| **Fountain, Counter and Supply Men and Women** | | | | | | | |
| 8 hours within 8 | 158.07 | 160.47 | 161.27 | 164.87 | 170.47 | TBD | TBD |
| 8 hours within 11 | 158.08 | 160.48 | 161.28 | 164.88 | 170.48 | TBD | TBD |
| 2 meal shift | 120.39 | 122.19 | 122.79 | 125.49 | 129.69 | TBD | TBD |
| 1 meal shift | 71.98 | 72.88 | 73.18 | 74.53 | 76.63 | TBD | TBD |
| **Food & Beverage Order Taker Room Service** | | | | | | | |
| 8 hours within 8 | 156.41 | 158.81 | 159.61 | 163.21 | 168.81 | TBD | TBD |
| Room Service Cashier/ | | | | | | | |
| Order Taker | 159.28 | 161.68 | 162.48 | 166.08 | 171.68 | TBD | TBD |
| **Service Fountain Men and Women** | | | | | | | |
| 8 hours within 8 | 160.20 | 162.60 | 163.40 | 167.00 | 172.60 | TBD | TBD |
| 8 hours within 11 | 160.36 | 162.76 | 163.56 | 167.16 | 172.76 | TBD | TBD |
| 6 hours straight | 122.39 | 124.19 | 124.79 | 127.49 | 131.69 | TBD | TBD |
| **Carvers, Salad or Sandwich Men and Woman (when they directly serve the public)** | | | | | | | |
| 8 hours within 8 | 162.26 | 164.66 | 165.46 | 169.06 | 174.66 | TBD | TBD |
| 8 hours within 11 | 162.73 | 165.13 | 165.93 | 169.53 | 175.13 | TBD | TBD |
| 2 meal shift | 126.58 | 128.38 | 128.98 | 131.68 | 135.88 | TBD | TBD |
| 1 meal shift | 73.84 | 74.74 | 75.04 | 76.39 | 78.49 | TBD | TBD |
| **Combination Cashier and Food Checker** | | | | | | | |
| 8 hours within 8 | 169.16 | 171.56 | 172.36 | 175.96 | 181.56 | TBD | TBD |
| 8 hours within 11 | 169.02 | 171.42 | 172.22 | 175.82 | 181.42 | TBD | TBD |
| 4 hours or less straight | 91.41 | 92.61 | 93.01 | 94.81 | 97.61 | TBD | TBD |
| **Head Waiters, Head Waitresses, Captains or Hostesses, in charge of individual Rooms or Room Service** | | | | | | | |
| 8 hours within 8 | 149.87 | 151.07 | 151.47 | 153.27 | 156.07 | TBD | TBD |
| 8 hours within 11 | 150.87 | 152.07 | 152.47 | 154.27 | 157.07 | TBD | TBD |
| **Hostesses** | | | | | | | |
| 8 hours within 8 | 170.57 | 172.97 | 173.77 | 177.37 | 182.97 | TBD | TBD |
| 8 hours within 11 | 171.31 | 173.71 | 174.51 | 178.11 | 183.71 | TBD | TBD |
| 6 hours | 131.64 | 133.44 | 134.04 | 136.74 | 140.94 | TBD | TBD |
| **Scrub Captain** | | | | | | | |
| Breakfast, Lunch, Tea | 64.60 | 65.50 | 65.80 | 67.15 | 69.25 | TBD | TBD |
| Dinner | 84.15 | 85.35 | 85.75 | 87.55 | 90.35 | TBD | TBD |
| Supper | 88.41 | 89.61 | 90.01 | 91.81 | 94.61 | TBD | TBD |
| **Bartenders** | | | | | | | |
| 8 hours within 8 | 139.69 | 140.89 | 141.29 | 143.09 | 145.89 | TBD | TBD |
| 8 hours within 11 | 140.37 | 141.57 | 141.97 | 143.77 | 146.57 | TBD | TBD |
| Service Bartender | 165.69 | 166.89 | 167.29 | 169.09 | 171.89 | TBD | TBD |
| Service Bar Attendant | 131.39 | 132.59 | 132.99 | 134.79 | 137.59 | TBD | TBD |

| | 7/14/13 | 8/14/13 | 2/14/14 | 8/14/14 | 8/14/15 | 8/14/16 | 8/14/17 |
|---|---|---|---|---|---|---|---|
| **Bartenders** | | | | | | | |
| 8 hours within 8 | 160.83 | 162.03 | 162.43 | 164.23 | 167.03 | TBD | TBD |
| 4 hours or less | 97.89 | 98.49 | 98.69 | 99.59 | 100.99 | TBD | TBD |
| Banquet Bartender | 98.09 | 99.29 | 99.29 | 99.69 | 101.49 | 104.29 | TBD | TBD |
| Bar Attendant | 130.47 | 131.67 | 132.07 | 133.87 | 136.67 | TBD | TBD |
| Banquet Bar Attendant (4 hrs.) | 66.02 | 66.62 | 66.82 | 67.72 | 69.12 | TBD | TBD |
| Head Bartender | 165.79 | 166.99 | 167.39 | 169.19 | 171.99 | TBD | TBD |
| **New Year's Eve All Bartenders** | | | | | | | |
| 7 hour shift or less | 190.01 | 191.06 | 191.41 | 192.99 | 195.44 | TBD | TBD |
| Overtime Rate | 23.20 | 23.35 | 23.40 | 23.63 | 23.98 | TBD | TBD |
| **Head Dishwasher, Kitchen Steward** | | | | | | | |
| Full Shift | 164.89 | 167.29 | 168.09 | 171.69 | 177.29 | TBD | TBD |
| Half Shift | 83.60 | 84.80 | 85.20 | 87.00 | 89.80 | TBD | TBD |
| **Vegetable Person, Dishwasher, Potwasher, Porter, Silver Polisher, Glass Washer** | | | | | | | |
| Full Shift | 160.01 | 162.41 | 163.21 | 166.81 | 172.41 | TBD | TBD |
| Half Shift | 82.24 | 83.44 | 83.84 | 85.64 | 88.44 | TBD | TBD |
| **Ice Distributor** | | | | | | | |
| Full Shift | 160.49 | 162.89 | 163.69 | 167.29 | 172.89 | TBD | TBD |
| Half Shift | 81.40 | 82.60 | 83.00 | 84.80 | 87.60 | TBD | TBD |
| **Night Porter** | | | | | | | |
| Full Shift | 166.16 | 168.56 | 169.36 | 172.96 | 178.56 | TBD | TBD |
| Half Shift | 84.24 | 85.44 | 85.84 | 87.64 | 90.44 | TBD | TBD |
| **Toast Pantry or Coffee Pantry** | | | | | | | |
| Full Shift | 158.91 | 161.31 | 162.11 | 165.71 | 171.31 | TBD | TBD |
| Half Shift | 80.62 | 81.82 | 82.22 | 84.02 | 86.82 | TBD | TBD |
| **Garbage Worker** | | | | | | | |
| Full Shift | 163.11 | 165.51 | 166.31 | 169.91 | 175.51 | TBD | TBD |
| Half Shift | 82.71 | 83.91 | 84.31 | 86.11 | 88.91 | TBD | TBD |
| **Night Garbage Worker** | | | | | | | |
| Full Shift | 166.16 | 168.56 | 169.36 | 172.96 | 178.56 | TBD | TBD |
| Half Shift | 84.24 | 85.44 | 85.84 | 87.64 | 90.44 | TBD | TBD |
| **Laundry** | | | | | | | |
| Folder | 160.72 | 163.12 | 163.92 | 167.52 | 173.12 | TBD | TBD |
| Distributor | 160.72 | 163.12 | 163.92 | 167.52 | 173.12 | TBD | TBD |
| Sorter/Washer | 161.52 | 163.92 | 164.72 | 168.32 | 173.92 | TBD | TBD |
| Head Washer | 161.92 | 164.32 | 165.12 | 168.72 | 174.32 | TBD | TBD |

## Other Hotel Service Classifications

| | 7/14/13 | 8/14/13 | 2/14/14 | 8/14/14 | 8/14/15 | 8/14/16 | 8/14/17 |
|---|---|---|---|---|---|---|---|
| Timekeeper | 161.88 | 164.28 | 165.08 | 168.68 | 174.28 | TBD | TBD |
| Telephone and Service | | | | | | | |
| Center Operators | 167.77 | 170.17 | 170.97 | 174.57 | 180.17 | TBD | TBD |
| Chief Linen Room | 158.35 | 160.75 | 161.55 | 165.15 | 170.75 | TBD | TBD |
| Inspector/Inspectress & | | | | | | | |
| Working Housekeeper | 162.94 | 165.34 | 166.14 | 169.74 | 175.34 | TBD | TBD |
| Sewers and Menders | 158.15 | 160.55 | 161.35 | 164.95 | 170.55 | TBD | TBD |
| Drapery Sewers | 161.52 | 163.92 | 164.72 | 168.32 | 173.92 | TBD | TBD |
| Room Cleaners | 160.73 | 163.13 | 163.93 | 167.53 | 173.13 | TBD | TBD |
| Half Shift (Extra or Night | | | | | | | |
| Shift Penalty shall not apply | | | | | | | |
| to Room Cleaner) | 81.81 | 83.01 | 83.41 | 85.21 | 88.01 | TBD | TBD |
| Bathroom Cleaners | 154.99 | 157.39 | 158.19 | 161.79 | 167.39 | TBD | TBD |
| Storekeepers | 163.74 | 166.14 | 166.94 | 170.54 | 176.14 | TBD | TBD |
| Combination Bell/Elevator | 154.95 | 157.35 | 158.15 | 161.75 | 167.35 | TBD | TBD |
| Linen Room Person | 160.73 | 163.13 | 163.93 | 167.53 | 173.13 | TBD | TBD |
| Parlor Cleaner | 160.28 | 162.68 | 163.48 | 167.08 | 172.68 | TBD | TBD |
| Combination Room Cleaner | | | | | | | |
| and Parlor Cleaner | 160.28 | 162.68 | 163.48 | 167.08 | 172.68 | TBD | TBD |
| Bell Captain | 110.13 | 111.33 | 111.73 | 113.53 | 116.33 | TBD | TBD |
| Bell Person | 100.77 | 101.97 | 102.37 | 104.17 | 106.97 | TBD | TBD |
| Bell Person (Graveyard) | 133.60 | 134.80 | 135.20 | 137.00 | 139.80 | TBD | TBD |
| Page Person | 144.77 | 147.17 | 147.97 | 151.57 | 157.17 | TBD | TBD |
| Combination Package/ | | | | | | | |
| Page Person | 155.01 | 157.41 | 158.21 | 161.81 | 167.41 | TBD | TBD |
| Check Room Persons and | | | | | | | |
| Package Persons | 145.95 | 148.35 | 149.15 | 152.75 | 158.35 | TBD | TBD |
| Mini Bar Attendants | 158.07 | 160.47 | 161.27 | 164.87 | 170.47 | TBD | TBD |
| Wall Washers | 169.18 | 171.58 | 172.38 | 175.98 | 181.58 | TBD | TBD |
| Utility or Maintenance Worker | 163.45 | 165.85 | 166.65 | 170.25 | 175.85 | TBD | TBD |
| Working Head Houseman or | | | | | | | |
| Housewoman | 164.46 | 166.86 | 167.66 | 171.26 | 176.86 | TBD | TBD |
| Houseman or Housewoman | 160.68 | 163.08 | 163.88 | 167.48 | 173.08 | TBD | TBD |
| Janitor | 160.68 | 163.08 | 163.88 | 167.48 | 173.08 | TBD | TBD |
| Lobby Porter | 160.68 | 163.08 | 163.88 | 167.48 | 173.08 | TBD | TBD |
| Banquet Houseman or | | | | | | | |
| Housewoman | 162.68 | 165.08 | 165.88 | 169.48 | 175.08 | TBD | TBD |
| Deep Cleaner | 169.18 | 171.58 | 172.38 | 175.98 | 181.58 | TBD | TBD |
| Baggage Porter | 150.69 | 153.09 | 153.89 | 157.49 | 163.09 | TBD | TBD |
| Door Attendant | 104.64 | 105.84 | 106.24 | 108.04 | 110.84 | TBD | TBD |

UNITEHERE! *local*

# EXHIBIT B

EXHIBIT B

# MEMORANDUM OF AGREEMENT

This Memorandum of Agreement ("Agreement") is entered into by and between UNITE HERE Local 2 (the "Union") and the Employer of the Employees at **_InterContinental Hotel Group Resources, LLC dba InterContinental San Francisco,_** hereafter, the "Employers" or "Hotels") (together, the "Parties").

1. The Union and the Hotels are parties to a Collective Bargaining Agreement (the "CBA"), dated August 15, 2018 to August 14, 2022, including the Parties' February 2019 Memorandum of Understanding modifying the 2013-2018 "Red Book".

2. The Parties agree that except as modified in this Agreement, the terms and conditions of the CBA, including all Appendices, Letters of Agreement, Side Letter Agreements, Letters of Understanding and Grievance Resolutions, shall continue in full force and effect until August 14, 2024 (the "Expiration Date"), and, unless either party desires to alter, terminate, or amend it, for successive annual periods. The CBAs shall automatically be renewed in full force and effect from year to year after August 14, 2024 unless either Party gives at least 90 days' written notice prior to the Expiration Date or any August 14 in succeeding years to the other parties hereto.

3. The following hourly rate increases shall apply during 2022:

   August 13, 2022: $0.50 wages ($0.56 non-tipped, $0.28 tipped)

   August 13, 2022: $0.16 pension (monthly increase of $24.64)

   September 1, 2022: $1.25 health and welfare (monthly increase of $192.50)

4. On April 1, 2023, the Trust Fund Consultant will examine Health & Welfare eligibility counts for the trailing 12-month period (April 1, 2022 thru March 31, 2023) to determine and report on the average percentage of restored employment for the year, using a comparator pre-pandemic baseline of 7,500 active members in the Fund.

   If the average is 80% or higher, the Hotels' contribution rate shall remain unchanged until the September 2023 allocation. If the average falls between 70-80%, the Employer shall, retroactive to September 03, 2022, increase the monthly contribution by an additional $0.25 per hour ($38.50 per month), bringing the total contribution increase to $1.50 per hour ($231 per month). If the average falls below 70%, the Employer shall, retroactive to September 03, 2022, increase the monthly contribution by an additional $0.50 per hour ($77 per month), bringing the total contribution increase to $1.75 per hour ($269.50 per month).

5. The Union shall allocate the following package increase to hourly wage rate increases and benefit fund contribution increases in its sole discretion, but may not allocate to any fund to which the Hotels have not agreed to contribute:

   August 14, 2023: $1.91

6. All provisions of the CBA shall remain in full force and effect during the term of this Agreement, except to the extent that they are modified, added to, or deleted by this Agreement. In the event of any inconsistency between the CBA and this Agreement, this Agreement controls.

7. Any disputes about the interpretation or application of this Agreement shall be subject to the grievance and arbitration procedure of the CBA.

IN WITNESS WHEREOF, the Parties hereto by their duly authorized representatives have agreed and set their hands.

FOR THE HOTELS

By: _R Vermden_

Its: _GM_

Date: _11/7/22_

Hotel

FOR THE UNION

By: _____

Its: _____

Date: _____

UNITE HERE Local 2

2

# EXHIBIT C

EXHIBIT C

**MEMORANDUM OF UNDERSTANDING**

Subject to ratification by UNITE HERE! Local 2 membership, as provided for in its Bylaws and Constitution, this Memorandum of Understanding ("MOU") is a final agreement by and between UNITE HERE! Local 2, affiliated with UNITE HERE! International Union (hereinafter referred to as the "Union") and the InterContinental Hotel San Francisco (hereafter, "Hotel" or "Employer"). The following modifications and amendments will be made to the Agreement that expired on August 14, 2018 and shall be in effect for the term of the new Collective Bargaining Agreement in effect between these parties unless other effective dates or a different duration is provided for particular sections of the agreement as stated below or in the underlying agreement. All contract section references are to the 2013-2018 "Red Book" unless otherwise noted.

I.      **Immigration (Section 11: Change of Status / Immigration, new "q")**
(q)  If an employee obtains appropriate work authorization within five (5) years after losing work authorization status solely as a result of changes in DACA, DAPA or TPS status, the employee must provide documentation of work authorization and return to work within six (6) months after obtaining it or forfeit the leave provided in this subsection. The reinstated employee will displace the least senior employee in the employee's former job classification until the next schedule bid when they may utilize their former frozen seniority in that classification. An employee will not accrue vacation or the other benefits based upon particular Plan policies during such absence.

II.      **Employee Safety (Hotel Service Department, Section 2 Room Cleaners, new Section "q"; Dining Room Department, Section 17 Room Service, new "I")**
1.    The Employer shall provide a safety alarm to each employee assigned to work in a guest room without other employees present, at no cost to the employee.  Each employee shall be required to carry the device with him or her at all times when working and to utilize such device when he or she believes there is an ongoing crime, harassment, or other emergency in the employee's presence.  The devices shall be able to summon immediate on scene assistance to their location from another employee or security guard, or other person.  The purpose of this section is to protect employee safety.  The device may not be used to track or discipline for productivity-related issues. The employee in danger may cease work and leave the immediate area where the incident occurred to await the arrival of the employee or security personnel or other person responsible for providing immediate assistance.  Such systems shall be installed in the Hotel no later than the end of the 2020 calendar year.

2.   The Hotel shall record an accusation that a guest has made an unwanted sexual advance, request for sexual conduct, or other verbal or physical conduct of a sexual nature towards an employee or towards another guest of the establishment, including the name of the guest. The Hotel shall inquire for the name of the guest if that information is not included in the initial notice to the Hotel.  If the Hotel is unable to learn the name of the guest, the Hotel shall learn and record as much identifying information about the guest as is reasonably possible.  The Employer shall maintain a list of all guests so accused for at least five (5) years from the date of the most recent accusation against the guest. Guest as used throughout this section means registered guest, others occupying guest rooms with registered guests, and visitors invited to guest rooms by a registered guest or other occupant of a guest room. Upon request, the Hotel shall reassign the employee to a different floor or work area away from the guest for the entire duration of the guest's stay.

If the Employer learns that any guest on the list is staying at the hotel, the Employer shall notify the Union and any housekeeper, room server or any other employees assigned to work in this guest's room of the same prior to the start of their scheduled shift, and shall warn the employees to exercise caution when entering that designated room during the time the guest is staying at the Hotel.  The Employer reserves the right to assign a non-bargaining unit employee to service the room.

3.   Upon receipt of an allegation of sexual assault or other criminal conduct by a guest against an employee, the Hotel shall promptly contact local law enforcement with jurisdiction, immediately notify the employee that law enforcement has been contacted, that he or she may be asked to provide a statement, and that they have a right to decline to do so, and provide the employee with sufficient paid time to provide a police statement, and shall fully cooperate with any investigation into the incident undertaken by the agency.

4.   When an allegation of sexual assault or criminal conduct by a guest against an employee is supported by a police report and statement made by such employee under penalty of perjury, the Hotel shall inform the guest that he or she is prohibited from returning to the Hotel, and shall maintain such prohibition for at least three (3) years from the date of the incident alleged in the statement.

5.   There shall be no retaliation against any employee for seeking to enforce his or her rights under this section by any lawful means or for otherwise asserting rights under this section.

**III.** **Neutrality** **(Section 5 Hiring, new "s")**

(s)  In the event that the Hotel becomes subject to a state or federal right to work law, the Employer agrees to remain neutral with respect to any of its employees' or prospective employees' decisions regarding membership in or support for the Union.  The Employer, its supervisors, managers and other agents will not take any action or make any statement that directly or indirectly states or implies any opposition to Union membership or to the selection or maintenance of the Union as the employees' collective bargaining representative, and will not encourage or assist employees either directly or through third parties to terminate Union membership, revoke dues checkoff authorization or invoke any right to reduce financial support to the Union.  The Employer will inform any employee who inquires about Union membership or support that the employee should contact the Union.

**IV.** **Pregnancy Accommodation** **(Section 16 Pregnancy Disability, new paragraph)**

If an employee so requests, and consistent with both the employee and employer's obligations under applicable law, the Employer shall provide a reasonable accommodation related to such employee's pregnancy, childbirth, or related conditions, including but not limited to the need to express milk for a nursing child.  "Reasonable accommodation" may include, but not be limited to, more frequent or longer breaks, time off to recover from childbirth, temporary transfer to a less strenuous or less hazardous position, job restructuring, light duty, additional break time, reduction in room assignments, private non-bathroom space to express breast milk, assistance with manual labor and modified work schedules. Any time off provided as a reasonable accommodation will run concurrently with any protected leave the employee is otherwise entitled to take for the condition under applicable law.

**V.** **Orientation** **(Section 5 Hiring, add new paragraph to "p")**

Upon request by the Union, Union representatives shall be afforded the opportunity to meet with new hires for thirty (30) minutes during the new employee orientation session, or within the first thirty (30) days of employment if the Employer does not hold an orientation session within that time frame, without Employer representatives present.  The Union shall provide advance written notice of any Union representatives designated to conduct such session.  New hires participating in the session will be on paid time.  The Union shall not make any disparaging comments about the Employer during such sessions.

**VI.** **Other Modifications to Red book**

A. **Other Funds:** Amend existing contribution reallocation provision to include the Education Fund. *(Section 24 Health and Welfare and Pension, 25.5, add to Child Elder and Legal)*

B. **Modify Section 9 "No Discrimination"** to include gender identity.

C. **Delete Section 16(j) "Safety and Health"**- Subcommittee not in existence; no longer applicable

D. **Delete Section 1(d)9 "Pilot Project"**: language obsolete

E. **Modify Section 7(d) "Posted Job Vacancies"** to read as follows:

(d)     The Employer reserves the right to withdraw the posted job vacancy and to be the sole judge, and consistent with its obligations under Section 6 above, of an applicant's qualification for filling a job vacancy.

F. **Term:** 8/14/18 thru 8/14/22

G. **Successorship:** Parties meet within 30 days following ratification to reconcile the existing successorship documents.

H. **Modify Section 12 "Grievance Procedure"** to read as follows:

**Step 3.**

(a)       If the grievance is not satisfactorily resolved at Step 2, the Union may file a written request for a Grievance Mediation hearing within seven (7) days of the Step 2 response.  If there is no response from management under Step 2, the Union shall have ten (10) days from the date of the Step 2 meeting to submit the written request.  The written grievance shall set forth the facts giving rise to the dispute including the date and person(s) involved and designate the grievance as well as the remedy sought.

(b) The Grievance Mediation shall be held within sixty (60) calendar days of the written request subject to mediator availability.

(c) The Grievance Mediation shall consists of two (2) management representatives and two (2) union representatives plus a neutral mediator who shall act as Chairman and who shall mediate the dispute in an attempt to have the parties reach a settlement.  The manager

involved in the incident or circumstances giving rise to the dispute should be present at the Grievance Mediation.

(d) The Grievance Mediation shall be governed by the following rules:

1. The grievant shall have a right to be present at the Grievance Mediation.

2. Each party shall have one (1) principal spokesperson.

3. Outside lawyers or consultants shall not participate in a Grievance Mediation.

4. Any documents presented to the mediator shall be returned to the respective parties at the conclusion of the hearing.

5. Proceedings shall be informal in nature. The presentation of evidence is not limited to that presented at earlier steps of the grievance procedure. The rules of evidence shall not apply and no formal record of the Grievance Mediation shall be made.

6. The mediator shall have the authority to meet separately with any person or persons but will not have the authority to compel a resolution of a grievance.

7. If no settlement is reached, the mediator shall provide the parties with an immediate written advisory decision, <u>if the practice is permitted</u>.

8. The mediator shall state the grounds for his/her advisory decision.

9. The Grievance Mediation shall have no power to alter or amend the terms of the Collective Bargaining Agreement.

10. The cost of the mediator shall be split between the Hotels and the Union, if the parties mutually agree to a paid mediator.

(e) As an alternative, by mutual agreement in advance of the Grievance Mediation hearing, the neutral fifth (5th) person may be designated a mediator/arbitrator who will attempt to mediate the dispute. In the event a mediated settlement cannot be reached, the decision of the mediator/arbitrator shall be binding on both parties.

(f) The parties may, by mutual agreement prior to the Grievance Mediation hearing, agree that the case may be heard without a neutral fifth (5th) person.

(g) Grievance Procedure for Employer/Union. The Employer and/or the Union shall be free to file grievances as described in (a) hereof directly with the other party. The initial consideration of such grievances shall commence with the Hotel Grievance Mediation as provided for in Step 3.

**VII.** **Modify General Rules Section 1(d)3 "Extra List Workers"** to read as follows:

3. <u>Extra List Workers</u>: On a hotel by hotel basis, after ratification, the Union and each hotel shall by mutual agreement determine for which classifications (excluding those classifications listed in #1 above) extra lists will be created. Extra lists that are already in place shall continue as modified below. Employees currently on a hotel's extra list shall have the right to keep their place on said lists, except where an employee is on more than one list at a given hotel. Such employees shall have to choose which list they will remain on. Extra List employees are allowed to be on only one list and work in only one classification at a given hotel.

Such lists shall be arranged in seniority order. The seniority order shall be determined by an individual's placement on an extra list as established after the 1999 contract negotiations, (i.e. the order on a current list shall be the seniority order with individuals added thereafter assigned according to their hire date.). The creation of a new extra list and the seniority of such list shall be by mutual agreement.

Consistent with Section 5. Hiring (c) and (d) of the CBA, Extra List employees must show proof of current Union affiliation (union member stamp book, dues deduction on a pay stub or dispatch slip) in order to be on an extra list and work at a given hotel. Such employees shall be required to complete Union membership application forms within 30 days of commencing employment. If after 30 days an extra list employee has not done so, the Union shall notify the hotel that the employee is not in compliance with this agreement. After two (2) days (excluding weekends or holidays) from receipt of notice, if such employee has not complied with this section, he or she shall be promptly removed from the schedule pending notice from the Union that the employee has made arrangements to become current in their dues.

Hotels using Extra List employees shall maintain one list per job classification. The number of persons on an Extra List will be determined by the hotel's business needs consistent with the provisions

of the CBA.  The application process shall be the standard hiring process at a given hotel.

**VIII.** **Modify Section 12(c) "Step 4. Arbitration"** to replace Charles Askin with Norman Brand. The Parties will agree to meet within 90-days of ratification to identify up to three (3) additional mutually acceptable arbitrators.

**IX.** **Modify Section 24.1 "Eligibility" (a) & (b)** to read as follows:

(a) All employees who have worked regularly three (3) hours or more per day, five (5) days or more per week, in at least three (3) weeks of the month immediately preceding the first day of the month for which contributions are due.

(b) All employees who are regularly scheduled for and work two (2) full shifts (a "full shift" is defined as six or more hours) or more per payroll week, in at least three (3) weeks of the month immediately preceding the first day of the month for which contributions are due.

**X.** **Modify General Rules Section 1(d)6.2 "Extras Become Regulars"** to read as follows:

(2)  Qualifying for Benefits:  Extra employees on hotel lists qualifying for health insurance and pension benefits for 6 months in a 12-month period based upon their work on one single Extra List at one hotel shall become a regular employee in that classification at that hotel, effective the first of the month following the sixth qualifying month, provided that extra employee desires to become a regular.

**XI.** **Modify Section 13(f) "Discipline**" to read as follows:

(f) If the report of a "spotter" agency is used as a basis for any discipline involving cash handling, the agency involved must be duly licensed in the State of California. Any disciplinary action shall take place within five (5) days of the receipt of the complete "spotters" report excluding Saturdays, Sundays, holidays, vacations, sick leave, leave of absence, or other authorized leave. The Union shall be provided a complete, un-redacted copy (excluding proprietary information and names of non-bargaining unit employees, except where relevant to the incident that gave arise to discipline) of the full spotter's report.

**XII.** **Modify Section 13 (a) Discipline** to provide for four (4) days to issue discipline.

**XIII.** <u>**Vacation Pay**</u> **(Section 12.2 Vacations (f))**
Vacation pay for non-tipped workers shall be paid at the current hourly rate.

**XIV.** **Worker Training & Re-employment (Section 3 Job Security, add or replace "b")**

It is in the mutual best interests of the Union and the Employer to safeguard the economic well-being of bargaining unit employees affected by layoffs due to changes in business operations by preserving their jobs and work opportunities, and to create a pool of skilled workers available for placement in other or newly created positions at facilities owned and/or operated by the Employer. Therefore, Section 3 shall be amended to provide for the following:

A. <u>Worker Rehire and Retraining List:</u> The Union will create and maintain a Worker Rehire and Retraining List, populated by employees who have been permanently laid-off from bargaining unit positions and prospective employees who have completed Education Fund classification training.

B. In the event the Employer implements any permanent layoffs of bargaining unit employees, the Employer will provide to the Union the names of each all such affected employees, their company seniority and classification seniority (as defined in Paragraph D below), their current address and phone number, and any other information the Union may request. Such affected employees will be placed on the Worker Rehire and Retraining List.

C. <u>Severance</u>**: Permanent Layoffs Non-Technology:** Except for employees permanently laid off due to technology, employees involuntarily and permanently laid off shall be offered a severance agreement with two options:

**Option 1**: $3000.00 per year of service, with 12 months of both Welfare and Pension contributions and no recall rights.

**Option 2**: $1500.00 per year of service, with 12 months of both Welfare and Pension contributions and 24 months of recall rights.

The Worker Training and Re-employment Provision will not cover employees who accept severance Option 1. Employees who accept severance Option 2 will be placed on the Worker Rehire and Retraining List.

<u>Permanent Layoffs Technology</u>: Employees displaced by technology will be covered by the terms of the technology agreement, and will not be covered by the Worker Retraining & Re-employment Provision during the 24-month job search period provided for in section (v) of that agreement. If, after that 24-month period an employee is permanently laid-off pursuant to section (xi) of that agreement, the employee will be offered a severance agreement with two options:

   a. $2500 per year of service, with 6 months of health insurance coverage and no recall rights or

   b. $1500 per year of service, with 6 months of health insurance coverage, and participation in the Worker Rehire & Retraining List as provided below.

D. **Job openings:**
When any regular position becomes available in a bargaining unit represented by UNITE HERE Local 2 within any hotel, restaurant, food and beverage outlet or other operation that is owned, operated, and/or managed by the Employer within the San Francisco Bay Area that cannot be filled through an in-house bargaining unit transfer pursuant to the provisions in the applicable collective bargaining agreement concerning the filling of vacancies, the Employer shall:

   1. Notify the Union of such job opening within five (5) business days;
   2. Fill such position with a worker referred to it by the Union from the Worker Rehire List.

Employees shall be referred to fill permanent vacancies under this provision by the following order of priority:

   1. *By Company Seniority:* Employees on the Worker Rehire and Retraining List who have previously been employed by the employer requesting referral and have worked in the same classification, or same job by a different title, for which the referral is requested shall receive first priority for referral, by Company Seniority, defined as an employee's total length of service in any operations conducted by the employer and its affiliates in the San Francisco Bay Area that are covered by a collective bargaining agreement with UNITE HERE Local 2, and not counting any period of time preceding a break of at least one year in continuous service for the employer and its affiliates.

2. *By Classification Seniority:* if no employees are available for referral by Group 1 above, employees who have worked in the same classification, or substantially similar classification, for which the referral is requested for another Employer in the San Francisco Bay Area whose employees are represented by the Union shall have second priority for referral, by Classification Seniority, defined as an employee's total length of service in the classification most recently held by the employee in any operations conducted by the employer and its affiliates in the San Francisco Bay Area not counting any period of time preceding a break of at least one year in continuous service for the employer and its affiliates. An employee referred under this section who within 60 (sixty) days is deemed not qualified to hold the position, shall be returned to the Worker Rehire and Retraining List.

3. *By Classification Training date:* if no employees are available for referral by Groups 1 or 2 above, workers who have received a classification-appropriate training certificate from the Education Fund shall receive third priority for referral, in the order in which the training certificates have been issued. A worker referred under this section shall be subject to Section 5 Hiring.

An employee hired who was eligible for five weeks' vacation under their previous employer shall receive an additional week of vacation with their new employer at the beginning of their third year of employment for a total of five weeks (2 weeks in accordance with the CBA, 2 weeks of supplemental vacation from the Fund, and an additional week paid by the Employer.)

When any permanent position becomes available within any hotel, restaurant, food and beverage outlet or other operation not covered by a collective bargaining agreement, that is owned, operated, and/or managed by the Employer within the San Francisco Bay Area, the Employer may solicit referrals from the Union, using the same process above.

The Employer shall not be responsible or held liable for any referrals made by the Union that fail to comply with the stated order of Company Seniority, Classification Seniority, Classification Training.

E. **Training for laid-off employees:**

It is agreed that the Education Fund will provide training, job-placement, and any other assistance (including economic assistance) deemed appropriate by the Fund trustees, to individuals who are on the Worker Rehire and Retraining List or who are hired from the Worker Rehire and Retraining List.  Consistent with the parties' agreement on Technology, it is understood that training and coursework requirements related to technological change may be offered through the Education Fund.

XV.   **Third Party Food Deliveries (Dining Room Department, Section 17 Room Service, add new "I")**

The Employer shall not permit third-party food deliveries to guest rooms.

XVI. **Industry Banquet Committee: (Section 22, Industry Banquet Committee)** Parties agree to raise cap to $200,000. It is agreed that moving to the automation of the scheduling process will be a priority.

XVII. **Food & Beverage Gratuities (Dining Room Department Section 10 Gratuities "g")**

Effective 60 days of ratification unless the existing practice is superior:

a.   Hotel agrees to 18% automatic gratuity on parties of 6 or more.

b.   Hotel will include the 15% automatic gratuity on breakfast coupons in the CBA.

c.   Hotel will add suggested gratuity percentages of 15/18/20 percent with corresponding dollar amounts above the signature line on guest checks for parties of 5 or less.  The suggested amounts will be based on the full check amount (excluding taxes) before any coupons or other discounts are deducted.

**XVIII.** <u>**Transportation**</u>

In response to the transportation issues created by the construction on the BART system, the Employer proposes to create local hotel joint committees to identify the actual number of regular BART riders impacted by the change from a 3 am to 5:30 am open, to review transportation alternatives identified by the city, and to identify hotel specific solutions to include schedule adjustments, transportation or parking subsidies, shuttles or other transportation alternatives such as carpooling incentives.

It shall be the intent of the labor management committee to identify ways to accommodate workers for the inconvenience, which will result from the BART retrofit project on the Trans-Bay Tube.

**XIX.** <u>**Housekeeping**</u>

(a) Effective 8/14/2019, modify Section 2. Room Cleaners (red book), paragraph 3 as follows – replace (9) checkouts/2 room drops with (8) checkouts/2 drops.

(b) Effective on ratification Rooms 3102, 3107, 3202, 3222, 3302, and 3322 shall count as three (3) credits on a room cleaners' daily room assignment.

(c) Effective on ratification when Double-Double rooms require full linen service on account of length of stay, such rooms will count as a checkout room for all purposes under the collective bargaining agreement

(b) <u>Limits on "Choice" or "Green" Programs</u>

The Employer shall supply housekeeping services to occupied guest rooms which are under the Employer's Green Program, or similarly named program in which guests are incentivized to forego housekeeping service, no less often than every third (3rd) day, for example, Sunday check-in, a room attendant will be assigned to clean the room on Wednesday. Housekeepers cleaning a room under this program which has not received housekeeping service for two (2) or more consecutive preceding days shall receive 1.25 times the ordinary credit for the type of room being cleaned. The 1.25-time credit is

intended to reduce one (1) room from base quota for every four (4) Green Program rooms cleaned; no partial credit is intended.

Effective August 14, 2020, Housekeepers cleaning a room under this program which has not received housekeeping service for two (2) or more consecutive preceding days shall receive 1.33 times the ordinary credit for the type of room being cleaned.  The 1.33-time credit is intended to reduce one (1) room from base quota for every three (3) Green Program rooms cleaned; no partial credit is intended.

**XX.  Arbitration of Post Expiration Grievances**:

Hotels agree to arbitrate post-expiration grievances consistent with the CBA timelines.

**XXI.  Economics**

1. Annual Allocations and Increases:

Year 1 (August 11th in year 1 and closest Saturday to August 14th for each subsequent year of the CBA):
- Health Fund - $50 per month (effective with September contributions / August hours)
- Pension Fund - $25 per month (effective with September contributions / August hours)
- Wages - $1.75 Non-tipped/$1.00 Tipped
- Bell/Door - $1.25 in addition to non-tipped increase
  - Non-tipped increases through the end of the contract, with the understanding that the non-tipped increases will end at the conclusion of the agreement.
  - The vacation rate will be two times the San Francisco minimum wage rate.
- Busser – $1.25 in addition to the non-tipped increases.

Year 2
- $1.45 Package (Total sum to be allocated by Local 2 for all wage and union benefit fund increases, except for additional Pension, Bell/Door and Busser increases provided for below).
- Bell/Door - $1.25 in addition to non-tipped increase
- Busser - $1.25 in addition to non-tipped increase

Year 3

- $1.45 Package (Total sum to be allocated by Local 2 for all wage and union benefit fund increases, except for additional Bell/Door increases provided for below).
- Modify Section 9(a) of the Dining Room Department as follows: increase the service charge for banquets to 75% of 20%
- Bell/Door - $1.00 in addition to non-tipped increase
- Busser – return to tipped increase

Year 4
- $1.05 Package – 8/14/21 (Total sum to be allocated by Local 2 for all wage and union benefit fund increases).
- $.50 Package – 3/13/22 (Total sum to be allocated by Local 2 for all wage and union benefit fund increases, except Pension and Bell/Door increases provided for below).
- $80.00 to Union Pension, effective for March 2022 contributions.
- Bell/Door – Non-tipped increase

2. The Union shall allocate the following package increases for that year to hourly wage rate increases and benefit fund contribution increases in its sole discretion, but may not allocate to any fund to which the Employer has not agreed to contribute:

| 08/17/19 | 08/15/20 | 08/14/21 | 03/13/22 |
|----------|----------|----------|----------|
| $1.45 | $1.45 | $1.05 | $0.50 |

.
3. The dollar amounts of the package increases shall not be altered by time-weighting of the effective dates of the allocations made by the Union.

4. For purposes of allocation of the total economic package increases, the following monthly contributions shall be converted to cents-per-hour by dividing the monthly increase by 154. It is provided, however, that if the plan eligibility rules are changed to reduce the number of bargaining unit employees who are eligible to participate in the plan, then the parties shall negotiate whether the foregoing divisors should be adjusted to reflect the effects of the change(s). During said negotiations, all other provisions of this Agreement and the Successor Labor Agreement (including, but not limited to the no strike/no lockout provisions), shall continue in full force and effect.

5. Eighty percent of the total bargaining unit hours are presumed to be worked by non-tipped employees and 20% by tipped employees.

Tipped employees shall receive 50% of the wage increases received by non-tipped employees. The overall wage increase allocated by the Union shall be distributed to non-tipped and tipped employees in proportion to the 80% / 20% presumed hours, by dividing the amount of the overall wage increase by 0.9 to determine the non-tipped wage increase and dividing the resulting amount by 2 to determine the tipped wage increase.

6. The Union shall advise the Employer of each allocation at least thirty (30) days prior to the effective date of the allocation, provided that if the Union's notice to the Employer is less than thirty (30) days, the Employer will not be excused from paying the increases as allocated by the Union unless there is actual prejudice to the Employer by the delay and then the Employer may be excused only for a period of time equal to the length of the Union's delay in giving notice.

7. Each annual total economic package increase to be committed by the Employer as set forth herein is an absolute maximum. Notwithstanding any change in applicable law or in conditions or circumstances, whether contemplated by the parties or not, including but not limited to changes in circumstances relating to the implementation of or modifications to applicable laws regulating health care or benefit fund funding requirements, the amount of the annual total economic package increase shall not exceed the amounts set forth above, or otherwise provided for in this MOU.

8. In no event shall any provision in a Labor Agreement, Successor Labor Agreement, Memorandum Agreement, Side Letter or any other such agreement, including but not limited to any provision in any such agreement purporting to guarantee or ensure minimum or specified health and welfare or pension contributions or benefits or minimum reserve levels, result in an annual total economic package increase in excess of the amounts set forth above, or otherwise provided for in this MOU. Any and all such provisions shall be modified to ensure that the Employer receives the full benefit of this subsection.

9. The total economic package increase shall not be increased by any actions of the plans. Each annual allocation shall be subject to any required approvals of applicable Health and Welfare, Pension, or other benefit fund(s). In all circumstances in which a Benefit Fund requires contributions greater than those allocated by the Union (whether by operation of a Rehabilitation Plan, by law or otherwise), the additional required contribution shall be diverted from the wages of employees on whose behalf contributions to the funds are made

or, to the extent permitted by law and by the applicable trust funds, from other Benefit Funds to which the Employer contributes pursuant to the Successor Labor Agreement. To the extent that the implementation of this Agreement would result in the Employer failing to comply with minimum contribution or funding requirements or other requirements of a Benefit Fund, or any legal requirement relating to any of the Benefit Funds, or if for any reason any Benefit Fund refuses to accept the terms of this Agreement or the Successor Labor Agreement, the Union shall promptly take all necessary steps (including but not limited to agreeing to diversions from or reductions to wages) so as to permit the Employer to comply with all such requirements without any increase to any annual total economic package and without the Employer incurring any other costs or liabilities of any kind, provided that the Union shall in no event be responsible in whole or part for any pension fund withdrawal liability of the Employer unless the Employer's withdrawal is caused by a Benefit Fund rejecting the Employer's continued participation because the Union failed to allocate sufficient contributions to meet the Benefit Fund's standards.

## **SIDE LETTER:   Technology**

(i) Technological change includes the use of automation, machines, computers, robots, software, tablets or other handheld devices that replace or substitute for or materially increase or decrease the type or manner of work performed by employees in the Employer's workplace.

(ii) The Employer shall provide the Union at least 30 days' notice before implementation of any plans to upgrade, modify, improve, or extend technology currently in use by bargaining unit employees that are made after the effective date of this Agreement at any hotel covered by a collective bargaining agreement with one or more of the foregoing local unions.  The Employer shall provide the Union at least 165 days advance notice prior to the implementation of any new technological change, occurring after the effective date of this Agreement, that replaces or substitutes for or materially increases or decreases the type or manner of work performed by employees in the Employer's workplace, at any hotel covered by a collective bargaining agreement with one or more of the foregoing local unions.

(iii) With respect to the implementation of new technology and subject to appropriate confidentiality agreements, the Employer shall explain to the Union the intended function of the new technology, the nature of the technology and who will develop it, the timing of its planned implementation, and the expected work needed to implement the technology and keep it running, and where available shall share prototypes. If the Union requests to bargain, it must do so within fifteen (15) days of the Employer's notice and shall include any information requests with such notice.  The Employer shall promptly negotiate the impact of the new technology on the bargaining unit employees and the work they perform.  Upon notice of a demand to negotiate, the process shall be governed by the following rules:

1. Information: The Employer shall provide any information requested by the Union within twenty (20) days of receipt of the notice.  The Union shall be afforded up to thirty (30) days, following receipt of requested information to meet with affected employees.

2. Negotiation: At the conclusion of the initial information gathering period, the parties shall meet over the following fifty (50) days in an attempt to reach a resolution.

3. Mediation: Should the parties fail to resolve the issue within fifty (50) days from when the negotiation period opens, either party may request the services of a federal mediator.

4. The Employer shall not implement any technology during such negotiations, but the Employer shall have the right to implement the technology upon the expiration of this 165-day period. The Employer shall not implement any technology unless the Employer has carried out these duties to the Union.

(iv) This notice and negotiation process shall be the sole and exclusive procedure for resolving disputes over the implementation of new technology. Any disputes arising out of this process shall be subject to the grievance and arbitration process under the applicable collective bargaining agreement covering the affected employees. The arbitrator, however, shall have no authority to order any particular outcome to the bargaining process.

(v) Any employee displaced due to technological change shall be entitled to recall to the classification from which the employee was displaced for 24 months following the date of displacement and to preference for other job openings at the hotel where the new technology is implemented in or out of the bargaining unit, after all other preferences possessed by incumbent employees at the hotel have been exercised but before new employees are hired, provided the employee is qualified for the position or can be qualified in a reasonable period of time with adequate training provided by the Employer. Preference in hiring also will be given to any employee displaced due to technological change, who applies for another position for which he or she is qualified, at other hotels or condos operated by the Employer subject to a collective bargaining agreement with a UNITE HERE affiliate and within the same State as the hotel from which the employee was displaced.

(vi) The Employer shall make all non-supervisory job postings electronically accessible to employees laid off under this subsection and to the Union to assist employees in their job searches.

(vii) While employees are waiting for an offer of a permanent position, the Employer shall offer all available extra work within their classification to them in order of classification seniority.

(viii) If an employee displaced under this subsection is recalled to (A) another position within the Union's bargaining unit at the hotel, the employee shall retain his or her house seniority and continuous service for vacation purposes, or (B) to a position outside the bargaining unit represented by the Union, continuous service with the Employer shall be recognized for vacation/PTO and health insurance purposes. If an employee displaced by technological change is hired into a new position at other hotels or condos operated by the Employer subject to a collective bargaining agreement with a UNITE HERE affiliate and within the same State as the hotel from which he or she was displaced, the provisions of that hotel's collective bargaining agreement shall apply.

(ix) No employee who has completed his or her probationary period and is recalled pursuant to this subsection shall be required to complete a new probationary period but if the employee cannot perform satisfactorily the work on the shift or station to which recalled he or she may transfer or be transferred back to layoff status within thirty (30) days after his/her date of recall.

(x) The Employer shall continue to make contributions to the applicable health insurance plan for any employee displaced as a result of the implementation of new technology, at the minimum level necessary to maintain existing benefits under the applicable health plan for six (6) months following the date of displacement.

(xi) If an employee displaced under this subsection elects not to seek another position with the Employer  at the outset of the displacement or is not offered another position during the 24-month job search period, he/she will be permanently laid off and offered the opportunity to execute a severance agreement to either include a payment equal to $2500 for every year of service, subject to all legally required taxes and withholdings and a general release of claims, or $1500 for every year of service in order to be placed on the Rehire and Retraining List. [1]

(xii) If technological changes reduce the duties of a classification without eliminating them, the classification shall continue to exist, but the Employer may adjust staffing levels, full or part-time status, or after bargaining with the Union the Employer may consolidate existing classifications or distribute the remaining duties to other bargaining unit classifications.  If new technology performs functions previously performed by bargaining unit employees and requires human operation of machines, the machines shall be operated by bargaining unit employees and the Employer shall train employees in the affected classification to operate new technology. If the machines used by bargaining unit employees require daily maintenance to ensure the continued operation, then bargaining employees will be trained to perform the work, unless such work is of the kind typically performed by other bargaining units or the Company's IT department. The Employer may limit training to those employees who volunteer to be trained.  Training opportunities shall be offered in accordance with house seniority among those in the affected classification.  The Employer shall allow up to two (2) Union representatives to be present to observe the training but to not participate in it. If operation requires a level of skill which may practically be obtained only through academic study, and the necessary courses are offered at educational institutions in the county where the hotel is located, the Employer shall pay the tuition and fees, of an employee taking such coursework, up to maximum amounts agreed to between the Employer and the Union.  The Employer shall not be obligated to pay for the time employees spend in the coursework.  If an employee completes the coursework successfully (average grades of at least "C") the Employer shall offer the employee the work of operating the machine(s) associated with the employee's former job functions.

Such offers shall be for the next available position performing this work following the employee's completion of this coursework.

**SIDE LETTER:  Food and Beverage Operations** (or add to existing Food & Beverage Operations (Section 21 Joint Study Teams or Section 20 Relations)

The parties shall establish a subcommittee at the Hotel to discuss and make recommendations to improve the efficiency and competitiveness of its food and beverage operations.

If the parties are unable to reach an agreement in the subcommittee, the Employer may propose modifications to Hours and Overtime, Lateral Service, Position Consolidations or Eliminations, as well as Wages, Health, Welfare and Retirement benefits for employees in the food and beverage operation.  This process also applies to changes in the mix of food and beverage offerings in the hotel (except banquets), which includes converting a space to a substantially different operation or shifting food and beverage availability from one space to another in generally contemporaneous changes, but not to include the complete closure of an outlet without any substitution of service.  The Employer shall submit its proposal to the Union in writing at least ninety (90) days in advance of its proposed effective date and offer to bargain with the Union over the proposal.

If at the end of that 90-day period, the Parties have not reached an agreement, the Union shall have the right to strike after notification by the Employer of its intent to implement its final proposal. The Union's decision to strike and the Employer's decision to implement its final proposal shall be made within thirty (30) days after the expiration of the 90-day period.  If the Employer decides to implement its final proposal it will not include the elimination or replacement of any union Health, Welfare and Retirement benefit plans.

## <u>SIDE LETTER:   Food & Beverage Outsourcing</u>

Upon request by the Union, the Employer shall meet to review food products outsourced in the kitchen. It shall be the intent of the parties to produce high quality, fresh food items in-house. Further, no current bargaining unit positions shall be supplanted or eliminated as a result of outsourcing food products without the agreement of the Union.  The Employer shall not be obligated, except by mutual agreement, to eliminate, reduce or bring back in-house any current food product outsourcing existing as of the date of this Agreement.  Nothing in this Agreement is intended to undermine or contradict the Food and Beverage Operations Side Letter, incorporated in this MOU.

## SIDE LETTER:   San Francisco Minimum Wage Ordinance Waiver

Effective July 1, 2019, and each July 1st thereafter for the life of this Agreement, the parties expressly and affirmatively waive the San Francisco Minimum Wage Ordinance through the annual allocation on August 14th.   The Union then has the option on August 14, 2019, and each August 14th thereafter for the life of this Agreement, to allocate the necessary funds to meet the requirements of the San Francisco Minimum Wage Ordinance or the waiver remains in full force and effect until the next August 14th.

## SIDE LETTER:   Extra Steady Banquet Servers

Effective on ratification PTO days for extra steady banquet servers will be calculated at six (6) hours per PTO day for all purposes under the Collective Bargaining agreement

## SIDE LETTER:   Bellmen

a. Effective on ratification bellmen will receive seventy percent (70%) of the following package fees. Such fees can only be change by mutual agreement of the parties.

        0-5lbs          $6.00   per package
        6-20lbs         $11.00 per package
        21-50lbs        $16.00 per package
        51lbs & up    $26.00 per package

b. For all groups signing a contract after this agreement is ratified, the Employer's standard group sales contract will include a fee of $2.00 per bag stored with the bell staff. When collected, such fees will be payable to bell persons in the same manner as any other luggage handling service charge.

IN WITNESS WHEREOF, the parties hereto by their duly designated representatives have hereunto set their hands.

Intercontinental Hotel San Francisco

UNITE HERE LOCAL 2

By: _____Vermolen_____

By: _____

Its: _Gene-al Manager_

Its: _President_

Date: _11/5/19_

Date: _____